IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01642-PAB-KLM

GERALD H. PHIPPS, INC. d/b/a GH Phipps Construction Company, a Colorado corporation,

   Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,

   Defendant.

---

# ORDER

---

This matter is before the Court on the Motion for Summary Judgment [Docket No. 50] filed by defendant Travelers Property Casualty Company of America ("Travelers"). The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This case involves insurance coverage under a Builder's Risk Policy (the "policy") that Travelers issued to plaintiff Gerald H. Phipps, Inc. ("GHP"), a construction company, for the period from October 1, 2011 to October 1, 2012. Docket No. 50 at 3, Statement of Undisputed Material Fact ("SUMF") 1-2; Docket No. 50-1 at 2. In terms of the scope of coverage, the policy provides, in relevant part, as follows:

   A.  COVERAGE

   We will pay for direct physical loss of or damage to Covered Property from

---

[1]The following facts are undisputed unless otherwise indicated.

>any of the Covered Causes of Loss.
>
>>1. Covered Property
>
>>Covered Property, as used in this Coverage Part, means "Builders' Risk."
>>. . .

Docket No. 50-1 at 18. "Builders' Risk," in turn, is defined as:

>Property described in the Declarations under "Builders' Risk" owned by [plaintiff] or for which [plaintiff is] legally liable consisting of:
>
>>a. Buildings or structures including temporary structures while being constructed, erected or fabricated at the "job site";
>
>>b. Property that will become a permanent part of the buildings or structures at the "job site":
>
>>>(1) While in transit to the "job site" or temporary storage location;
>
>>>(2) While at the "job site" or at a temporary storage location.
>
>"Builders' Risk" does not include:
>
>>a. Contraband, or property in the course of illegal transit or trade;
>
>>b. Buildings or structures that existed at the "job site" prior to the inception of this policy;
>
>>c. Land (including land on which the property is located) or water.

*Id.* at 34.

Sometime after October 2011, GHP entered into a contract with the University of Denver ("DU") to renovate and expand the DU library, Docket No. 50 at 4, SUMF 4; Docket No. 50-2 at 5, p. 20:20-23, which was originally constructed in either 1971 or 1972. Docket No. 50 at 4, SUMF 5; Docket No. 50-2 at 11, p. 27:11-17. GHP's work involved renovating the existing 154,000 square foot library building and constructing a

16,000 square foot addition. Docket No. 50 at 4, SUMF 4. The existing building contained asbestos. *Id.*, SUMF 5. The initial intent of GHP and DU was to avoid asbestos mitigation costs by not disturbing the asbestos located in two elevator shafts and four stairwells at the library and, therefore, to limit work on those areas to minor drywall patching and painting. *Id.* at 4-5, SUMF 6-7; Docket No. 50-3 at 6, p. 45:4-22; Docket No. 50-2 at 13, p. 52:12-18. DU entered into separate contracts with Excel Environmental and Herron Enterprises ("Herron") to perform asbestos abatement work and environmental testing. Docket No. 50 at 5, SUMF 8.

On April 4, 2012, rapidly melting snow migrated down portions of the four stairwells and two elevator shafts of the existing library (the "water intrusion").[2] Docket No. 50-4 at 3. GHP contacted an abatement consultant and had the water in the stairwells mitigated "under asbestos removal criteria." *Id.* In an email dated April 4, 2012, Herron's president, Lennie Herron, stated that the stairwells and elevator shafts "will ultimately require abatement/demolition due to microflora (mold) as it will not be possible to open the walls and dry these concealed areas with blowers due to the concealed fireproofing." Docket No. 50-6 at 2.

On April 5, 2012, GHP filed a claim with Travelers related to the damage caused by the water intrusion. Docket No. 50-7 at 2.[3] At the time of the water intrusion, GHP

---

[2] The water intrusion appears to be related to GHP's removal of the DU library's roof. *See* Docket No. 50 at 1 ("GHP had removed the roof of the building and water entered four existing stairwells and two existing elevator shafts").

[3] Although the parties do not say so explicitly, it is clear that GHP anticipated at the time it submitted the claim that it, rather than DU, might be liable for the damage caused by the water intrusion. The primary expense GHP anticipated from the water intrusion damage was asbestos containment and remediation and subsequent drywall

3

had not performed any patching or painting of the drywall in the stairwells or elevator shafts, but had performed some "layout work" in those areas. Docket No. 50-2 at 15-16, p. 68:10-69:1. The "layout work" consisted of determining locations for various systems, including "mechanical, electrical, and communication systems, that were routed through" the stairwells and elevator shafts as well as certain drywall penetrations, which consisted of drilling through the drywall in the stairwells and elevator shafts. Docket No. 54-1 at 2-3, pp. 43:11-44:22.[4] In responding to GHP's claim, Travelers representative Bradley DuPuis noted that, while "the initial scope of work on the building was to repaint the stair tower interiors, due to the asbestos content in the drywall," after the water intrusion, "the asbestos . . . needs to be removed, because it is wet inside." Docket No. 50-7 at 4.

In a letter dated April 23, 2012, Travelers denied GHP's claim on the ground that the policy does not cover damage to the existing building. Docket No. 50-9 at 2-3. After Travelers denied GHP's claim, GHP sought reimbursement of asbestos remediation costs from DU and requested that DU submit a claim to its property insurer. Docket No. 50 at 7, SUMF 19. DU, however, refused to reimburse GHP for remediation costs and declined to submit a claim to its insurer. *Id.*

On two occasions, GHP requested reconsideration of Travelers' denial of

---

removal. *See* Docket No. 50-7 at 3 ("they are meeting with a remediation company to get a price on the abatement, and then they need to get a price on the new drywall in the stair towers").

[4]Regarding these "penetrations," Kurt Klanderud, GHP's president, testified that it was his understanding that "in some cases penetrations" had been performed, Docket No. 54-1 at 2, p. 43:15-16, but he later indicated that he was not sure if the penetrations had been performed at the time of the water intrusion. *Id*. at 3, p. 44:20-22.

4

coverage. *See* Docket Nos. 50-10, 50-12. Both requests were denied. *See* Docket Nos. 50-11, 50-13. In GHP's second request for reconsideration, GHP detailed several pieces of work that had been performed on the stairwells and elevator shafts prior to the water intrusion event, including coordinating with Herron concerning removal of panels that may have been in contact with asbestos-containing materials, coordinating the disposal of panels that had been removed from the stair towers, cutting into the drywall in the basement elevator area, and removing fireproofing materials from the cavity of the stairwell. Docket No. 50-12 at 3-4.[5] Travelers responded that GHP's letter did not identify any instances where "the water damaged GHP's work in the stairwells or elevator shafts." Docket No. 50-13 at 2.

GHP filed this lawsuit on April 10, 2014 in the District Court for Douglas County, Colorado. Docket No. 3. Travelers removed the case to this Court on June 11, 2014. Docket No. 1. GHP brings claims for breach of contract, statutory and common law insurance bad faith, and declaratory judgment. Docket No. 3 at 2-6. Among other things, GHP seeks $804,661.76 in costs incurred after the water intrusion for asbestos mitigation and remediation, spray-applied fireproofing, drywall, and insulation. Docket No. 50 at 8, SUMF 26; Docket No. 50-14 at 2. On August 27, 2015, the Court granted

---

[5]Much of GHP's letter detailing the work performed on the stairwells before the water intrusion describes activities conducted by Herron. *E.g.*, Docket No. 50-12 at 2-3 ("Herron conducted an initial round of destructive investigations of the . . . stairwells"). In addition, several of GHP's examples of work performed on the stairwells and elevator shafts do not specify whether GHP or Herron performed the work. *E.g.*, *id.* at 3 ("On March 12, 2012, asbestos contaminated materials were removed from the elevator pits within the damaged area"); 3-4 ("Between March 26 and March 30, 2012 the wall cavity of the NW basement stairwell was opened, and fireproofing materials were removed as part of ongoing inspection of the stairs and elevator shafts").

partial summary judgment in favor of Travelers and against GHP on GHP's statutory insurance bad faith claim. Docket No. 59.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party

may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

GHP's breach of contract and declaratory judgment claims hinge on whether its claimed loss is covered under the policy. An insurance policy is a contract and should be interpreted consistently with the well-settled principles of contract interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The interpretation of an insurance policy is a legal question. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002).[6] The words of the contract should be given their plain meaning according to common usage; strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990).

Travelers argues that GPH did not suffer a loss to covered property because the stairwells and elevator shafts were pre-existing structures that are specifically excluded from the definition of "builders' risk." Docket No. 50 at 10-12; Docket No. 50-1 at 34. Travelers further argues that, even if GHP's work on the stairwells and elevator shafts

---

[6]The parties agree that Colorado law applies to the claims in this case. The Court concurs. *Cf. Grynberg v. Total* S.A., 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

was covered under the policy, the damages that GHP claims are not covered because, at the time of the water intrusion event, GHP had not performed any work in those areas. Docket No. 50 at 12-13. GHP responds by arguing that the stairwells and elevator shafts were not "buildings" or "structures" excluded from the policy, but rather "*components* that were intended to become permanent parts of the newly renovated and expanded library building." Docket No. 54 at 13 (emphasis in original). GHP further argues that, since it had performed work in the stairwells and elevator shafts prior to the water intrusion, its losses were covered under the policy. *Id.* at 14-15.

Before considering the language of the policy, the Court takes up the factual issue of what work GHP performed before the water intrusion. GHP concedes that, under its contract with DU, the damaged elevator shafts and stairwells "were not initially scheduled to be abated" and would have "no work in them" besides "minor patching and paint." Docket No. 50-3 at 6, p. 45:4-22. GHP also concedes that, as of the time of the water intrusion event, it had not performed any of this patching or painting. Docket No. 50-2 at 15-16, pp. 68:24-69:1. The work that GHP had performed on the stairwells and elevator shafts was limited to "layout," which Mr. Klanderud described as determining the locations for various systems that would run through those areas. Docket No. 54-1 at 2, p. 43:11-21. Although Mr. Klanderud testified that layout work may have included certain "penetrations," which he describes as drilling through the drywall to set layout locations, *see id.* at 3, p. 44:5-11, 21-22, his testimony reveals that he was unsure whether any of those "penetrations" had occurred at the time of the water intrusion. *See id.* at 3, p. 44:20-21 ("If some of the penetrations had been put in place . . ."). GHP's only other proffered evidence that any drilling actually took place in the stairwells

or elevator shafts is in its second letter to Travelers requesting reconsideration, where GHP represented that, on March 2, 2012, it "cut into the drywall surrounding the fire damper so that further conditions could be observed in the basement elevator area. A location for a new fire damper was also indicated on the wall." Docket No. 50-12 at 3. Although GHP has introduced some evidence that it performed drilling on at least one existing elevator shaft and testimony that it performed other "layout work" on the damaged stairwells and elevator shafts, GHP has introduced no evidence that the water intrusion from the roof damaged the work that it performed in the basement elevator area or caused GHP to have to redo any work. This is unsurprising, as the damages that GHP seeks are the costs of asbestos mitigation and remediation, not the costs of its own labor to replace or redo any of its previously-performed renovation work. Docket No. 54 at 8 (admitting that GHP seeks compensation for asbestos mitigation costs).

The Court now considers the policy language. The policy defines property covered by the policy as "Builders' Risk." Docket No. 50-1 at 18. The policy both provides a definition of the term "Builders' Risk" and an explanation of what "Builders' Risk" does not include. "Builders' Risk" is defined as property owned by plaintiff, or for which plaintiff is legally responsible, consisting of two different categories of property. The first category consists of "Buildings or structures including temporary structures while being constructed, erected or fabricated at the 'job site.'" Docket No. 50-1 at 34 (¶ 7). Travelers claims, in its reply brief, that none of the layout work or any drywall penetrations performed by GHP "involved 'constructing, erecting, or fabricating' the water-damaged stairwells and elevator shafts," and as a result, such work falls outside

of the policy scope. Docket No. 58 at 9. However, it also concedes that "'Builders' Risk' covers only work that GHP performs on an existing structure, not the existing structure itself that GHP did not construct." *Id.* at 10. Travelers' Rule 30(b)(6) witness took this analysis one step further. When asked at his deposition whether layout work was covered under the policy, he responded that it would only be covered if it needed to be "replaced or redone." Docket No. 54-2 at 2, p. 74:21-25. Thus, on one hand Travelers takes the position that layout work and drywall penetrations to existing structures do not fall within the definition of "Builders' Risk" because such work was not done to a structure "being constructed, erected, or fabricated," and on the other hand, Travelers concedes that layout work and drywall drilling performed on an existing structure are covered to the extent that, after the remediation, such work would need to be redone. The Court need not resolve these contrary interpretations of the policy for two reasons. First, GHP has failed to raise any dispute of material fact (or even to argue) that the layout work needs to be redone after the asbestos remediation. It makes sense that it would not have to be redone if, by virtue of removing the drywall during remediation, the location of the pipes, wire, and conduits became apparent. Thus, even if the Court interpreted the policy to cover layout work and drilling, GHP nevertheless does not show any loss covered by the policy. Second, for reasons explained below, the exclusion clause regarding "Builders' Risk" controls the disposition of the motion.

The second category of property under the definition of "Builders' Risk" consists of "[p]roperty that will become a permanent part of the buildings or structures at the 'job site': (1) While in transit to the 'job site' or temporary storage location; (2) While at the

'job site' or at a temporary storage location." Docket No. 50-1 at 34 (¶ 7). GHP argues that the existing stairwells and elevator shafts "should be considered mere building components that were intended to become permanent parts of the newly renovated and expanded library building." Docket No. 54 at 13. GHP's argument rests on its definition of "structure," which, as explained below, is untenable. Moreover, even if the layout work did fall within the definition of "Builders' Risk," it would be excluded under the definition of what "Builders' Risk" does not include and therefore would not be covered.

In addition to the policy defining what "Builders' Risk" includes, the policy also defines what "Builders' Risk" does not include. The policy states, in relevant part, that "Builders' Risk" does not include "[b]uildings or structures that existed at the 'job site' prior to the inception of this policy." Docket No. 50-1 at 34 (¶ 7). Travelers argues that the stairwells and elevator shafts are excluded from the policy because they are "[b]uildings or structures that existed at the 'job site'" prior to the policy's inception. Docket No. 50 at 10-13. It is undisputed that the stairwells and elevator shafts existed before the policy went into effect on October 1, 2011.

GHP points out that the policy does not define "structures" and argues that the stairwells and elevator shafts are not excluded "buildings" or "structures," but rather "building components." Docket No. 54 at 13. GHP relies on Merriam-Webster's Dictionary Online, which defines "structure" as "(1) something (such as a house, tower, bridge, etc.) that is built by putting parts together and that usually stands on its own, or (2) something (as a building) that is constructed." *Id.* (citing *Structure*, Merriam-Webster's Dictionary Online, http://www.merriam-webster.com/dictionary/structure). GHP's argument is confusing at best. Whether the stairwells and elevator shafts were

structures or components of a structure or building, the fact remains that they were components of a building or structure that existed before the inception of the policy. As such, they fall within the exclusionary language. Damage to components constitutes damage to the structure or building itself. Thus, GHP's layout work to the stairwells and elevator shafts involved "[b]uildings or structures that existed at the 'job site' prior to the inception of this policy," and is therefore outside the scope of coverage.

Finally, GHP argues that the "Expediting Costs and Additional Cost of Construction Materials and Labor" language of the policy provides coverage. Docket No. 54 at 14. That provision entitles GHP to costs "made necessary by a Covered Cause of Loss to Covered Property at the 'job site.'" Docket No. 50-1 at 23. Because the stairwells and elevator shafts are excluded from the definition of "Builders' Risk" and GHP has not introduced evidence that the water intrusion damaged its own work, GHP has not shown any loss to covered property. Travelers, therefore, did not breach this portion of the policy. Moreover, as Travelers argues, GHP does not identify any additional costs that it incurred that are covered by this provision.

In sum, the Court finds that GHP has not demonstrated a genuine dispute of material fact that it suffered damage to "covered property" under the policy. Summary judgment is therefore appropriate as to GHP's breach of contract and declaratory judgment claims. Because the Court concludes that Travelers correctly denied coverage, summary judgment is appropriate on GHP's common law bad faith claim as well. "It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d

1184, 1193 (10th Cir. 2009) (citations omitted).

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Travelers Property Casualty Company of America's Motion for Summary Judgment [Docket No. 50] is **GRANTED**. It is further

**ORDERED** that the first, second, and fourth claims for relief of plaintiff Gerald H. Phipps, Inc. are dismissed with prejudice. It is further

**ORDERED** that the trial in this matter scheduled to begin on January 19, 2016 is **VACATED**. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED January 8, 2016.

                        BY THE COURT:

                        s/Philip A. Brimmer
                        PHILIP A. BRIMMER
                        United States District Judge